# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| DANNY PRATT, | ) |
| | ) |
| Plaintiff, | ) |
| | ) No. 17 C 1600 |
| v. | ) |
| | ) Judge Sara L. Ellis |
| EVERALBUM, INC., a Delaware corporation | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

Plaintiff Danny Pratt brings this putative class action complaint against Defendant Everalbum, Inc. ("Everalbum"), alleging Everalbum has violated the Illinois Right of Publicity Act ("IRPA"), 765 Ill. Comp. Stat. 1075/1 *et seq.*, by using Pratt's name without his consent in text invitations sent to his contacts through the set-up process of its mobile application ("app"), Ever.[1] Everalbum has filed a motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). Everalbum argues that (1) IRPA does not apply when the use of another's identity occurs outside the public sphere, and (2) Pratt expressly consented to the use of his name in the text messages sent through the Ever app. Because the Court concludes that Pratt consented to the use of his name in the text messages, the Court grants Everalbum's motion for judgment [25].

---

[1] Pratt initially also brought a claim against Everalbum for breach of contract (Count II of the complaint), but the parties have stipulated to the dismissal of this claim. *See* Doc. 23.

## BACKGROUND[2]

Everalbum owns and manages Ever, a smartphone app that provides photo and video storage space for Apple and Android devices and allows users to share and edit photos. In October 2016, when Pratt downloaded Ever, that version of the app offered users 1000 gigabytes ("GB") of free photo storage if they invited all their contacts to use the app.

The app set-up process worked as follows: when a user downloaded Ever, he or she created an account. The app offered users two options: a free version allowing unlimited basic photo storage or an upgraded paid monthly service allowing storage of photos and high definition videos. As part of the set-up process, users were presented with a screen that stated "Allow Access to Contacts?" where users could select either "No Thanks" or "Get Free Storage." Doc. 1-1 ¶ 16. If users selected "Get Free Storage," the app displayed a confirmation prompt asking users to allow Ever to access their contacts, reading "'Ever' would like to access your contacts." Doc. 17-1 ¶ 10. This allowed the user to choose which contacts to invite with options of "Don't allow" and "OK." *Id.* Selecting "OK" led the user to another screen that said "Never Pay for Photo Storage Again," informing users that they could "Earn 1000 GB by inviting all friends" to download Ever "Via SMS." *Id.* ¶ 11; Doc. 1-1 ¶ 16. Users could then select which contacts would receive invitations, pressing an "Unlock Free Storage" button for invitations to be sent. Doc. 17-1 ¶ 12. After doing so, users landed on a screen thanking them for inviting friends to join Everalbum, which also stated "Your friends received a text inviting

---

[2] In deciding Everalbum's motion for judgment on the pleadings, the Court considers Pratt's complaint, Everalbum's answer, and the documents attached as exhibits to Everalbum's answer in the light most favorable to Pratt. *N. Ind. Gun & Outdoor Shows, Inc. v. City of S. Bend*, 163 F.3d 449, 452–53 (7th Cir. 1998); *Drager v. Bridgeview Bank*, No. 1:10-cv-7585, 2011 WL 2415244, at *3 (N.D. Ill. June 13, 2011) (court may consider affidavit attached to defendant's answer in ruling on Rule 12(c) motion without converting motion into a motion for summary judgment).

them to view and store their photos. Your photos are always private and were not shared." Doc. 17-1 ¶ 13.

Once users elected to unlock the offered free storage, Everalbum sent text message invitations to the selected contacts that read "[user name] just recommended you check out your photos on Ever. Link expires tomorrow," followed by a link to the Apple App Store or Google Play Store. Doc. 1-1 ¶ 19; Doc. 17-1 ¶¶ 14–15. The name displayed in the message was the user name provided by the user during the creation of his or her account.

Pratt downloaded the app in October 2016, went through the invitation process, and elected to invite all his contacts. Pratt's contacts then received the above text message with his name (Danny Pratt) in place of the [user name]. Like all Ever users, Pratt was not able to edit or see the content of the invitation before the invitation went out.

## LEGAL STANDARD

"A motion for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure is governed by the same standards as a motion to dismiss for failure to state a claim under Rule 12(b)(6)." *Adams v. City of Indianapolis*, 742 F.3d 720, 727–28 (7th Cir. 2014). A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits. Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In considering a Rule 12(b)(6) motion to dismiss, the Court accepts as true all well-pleaded facts in the plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011). To survive a Rule 12(b)(6) motion, the complaint must not only provide the defendant with fair notice of a claim's basis but must also be facially plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct.

1955, 167 L. Ed. 2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

**ANALYSIS**

**I.      IRPA Violation**

Pratt claims that Everalbum used his and other class members' names without their consent in the text messages sent to their contacts in violation of IRPA. IRPA prohibits the use of one's identity for commercial purposes without his or her written consent.[3] 765 Ill. Comp. Stat. 1075/30. IRPA includes a person's name as part of his or her "identity." 765 Ill. Comp. Stat. 1075/5. IRPA defines "commercial purpose" as:

> the public use or holding out of an individual's identity (i) on or in connection with the offering for sale or sale of a product, merchandise, goods, or services; (ii) for purposes of advertising or promoting products, merchandise, goods, or services; or (iii) for the purpose of fundraising.

*Id.* To state an IRPA claim, Pratt must allege (1) appropriation of his name or likeness (2) without his written consent and (3) for another's commercial benefit. *See Blair*, 859 N.E.2d at 1191–92. Everalbum argues that Pratt's IRPA claim fails because (1) IRPA does not reach private communications recommending a product or service, such as the text messages at issue here, and (2) Pratt expressly consented to having his identity revealed in the text messages when he granted the app access to his contacts and selected to send invitations to those contacts. The Court need only address the issue of consent to dispose of the case.

Everalbum argues that Pratt's allegations demonstrate he gave written consent to the use of his name in the text messages by voluntarily electing to send those messages to his contacts

---

[3] IRPA completely replaces common law right of publicity or appropriation of one's likeness claims. *See Blair v. Nev. Landing P'ship*, 859 N.E.2d 1188, 1192, 369 Ill. App. 3d 318, 307 Ill. Dec. 511 (2006).

4

during the app's set-up process.  Everalbum highlights the fact that, in selecting to obtain free storage through the Ever app, Pratt agreed to send the invitations to his selected contacts "[v]ia sms."  Doc. 17-1 ¶¶ 10–13.  As Ever notes, once a user like Pratt finalized the invitation process by pressing the "[u]nlock free storage" button, the invitations were sent to the user's selected contacts and the user landed on a confirmation page that indicated that "[y]ou invited friends" and "[y]our friends received a text inviting them to view and store their photos."  *Id.* ¶ 13.  Pratt takes issue with Everalbum's argument, arguing that the messages amounted to deceptive advertisements that went beyond the scope of any purported consent Pratt may have given to sending messages to his contacts.  Pratt further claims he could not have expected to have his name appear on the invitations or for the invitations to include false statements.

IRPA provides individuals with the right to control and choose whether and how their identity is used for commercial purposes.  765 Ill. Comp. Stat. 1075/10.  Under IRPA, consent is not a binary matter; one can consent to the use of his or her identity for one purpose but not another.  *See, e.g.*, *Trannel v. Prairie Ridge Media, Inc.*, 987 N.E.2d 923, 931, 2013 Ill. App. 2d 120725, 370 Ill. Dec. 157 (2013) (finding that plaintiff's consent for one purpose did not extend to unlimited use of likeness for commercial purposes); *Trudeau v. Lanoue*, No. 04 C 7165, 2006 WL 516579, at *6 (N.D. Ill. Mar. 2, 2006) (finding that use by defendants of plaintiff's name and likeness in creating websites and registering trademarks went "far beyond the limited scope" of the authorization he provided to distributors to use his identity in advertising materials).  Pratt contends that, in including his name in the text invitation and not allowing him to preview the message sent to his contacts, Everalbum exceeded the scope of any consent he provided.  The Court disagrees, however.

5

The Ever app asked for Pratt's consent before sending text messages to his contacts, informing Pratt that he could choose which friends to invite and that those invitations would be sent via text message. Pratt affirmatively decided to follow through with the sending of the messages, clicking through several prompts before those invitations were sent. In an analogous situation, a California court considering a common law right of publicity claim found that, based on the representations made by LinkedIn, "a reasonable user would have understood that her name would be used in invitations to join LinkedIn that would be sent to her contacts who were not already LinkedIn users." *Perkins v. LinkedIn Corp.*, 53 F. Supp. 3d 1190, 1215 (N.D. Cal. 2014). Like with the Ever app, during LinkedIn's account creation process, users have the opportunity to send invitations to their friends. *Id.* at 1197. Users go through a similar multi-step invitation process that requests access to the user's contacts, with multiple opportunities to cancel the invitations. *Id.* at 1197–99. For example, users are presented with the opportunity to "[s]tay in touch with your contacts who aren't on LinkedIn yet. Invite them to connect with you." *Id.* at 1199. If users send the invitations, their contacts receive emails stating, "I'd like to add you to my professional network" with a signature line including the sender's name. *Id.* The *Perkins* court found that, based on the disclosures LinkedIn made, and the opportunities provided to opt-out, users consented to the use of their name in this initial invitation email.[4] *Id.* at 1215. Similar to *Perkins*, although Everalbum never presented Pratt with the exact text of the message, the use of his name was necessary to the invitation process and the Court therefore finds that Pratt's consent to the sending of the invites included the use of his name. *See id.*

---

[4] The *Perkins* court did limit LinkedIn users' consent to the use of their names to only the initial invitational email, finding that, at the pleading stage, the consent to the first email did not defeat the right of publicity claim as it related to subsequent invitational emails that LinkedIn sent out on users' behalf. *Perkins*, 53 F. Supp. 3d at 1216. Here, however, Pratt only alleges that Everalbum sent one text message to each of his contacts, so the *Perkins* court's caveat does not apply.

The Court does not find Pratt's citation to *Cohen v. Facebook, Inc.*, 798 F. Supp. 2d 1090 (N.D. Cal. 2011), to require a different result. Unlike the situation in *Cohen*, users of the Ever app do not consent to a blanket terms of service agreement with various unforeseeable provisions buried in fine print. *See id*. at 1095 (holding that users did not consent to the use of their identity for commercial purposes using Facebook's "Friend Finder" service because the terms of service were too ambiguous to find consent). Instead, the Ever app in clear terms on consecutive screens suggested that Pratt invite friends, asked for access to his contacts, and informed him that the messages would be sent "via SMS." Doc. 17-1 ¶ 11. Pratt had to explicitly choose to give Ever access to his contacts, invite all his contacts via SMS, and pass up multiple opportunities to cancel the invitation process before the messages were sent. Such a process, as discussed above, provides notice that the Ever user's name will be used in the messages sent to the user's contacts. *See Perkins*, 53 F. Supp. 3d at 1215.

Pratt also argues that his expectation that Ever not use his name in the invitations is reasonable because not all mobile apps incorporate senders' names into invitations, providing two examples of such applications. *See* Doc. 26 at 9 (citing *Cour v. Life360 Inc.*, No. 16-cv-00805, 2016 WL 4039279, at *1 (N.D. Cal. July 28, 2016), and *McKenna v. WhisperText*, No. 5:14-cv-00424-PSG, 2015 WL 5264750, at *1 (N.D. Cal. Sept. 9, 2015)). Both cases involved apps that sent text invitations from anonymous numbers and without the sender's name. *See id.* However, the mere existence of other applications that send anonymous invitations does not make Pratt's expectation reasonable, particularly when Pratt has not claimed any knowledge of or reliance on such apps and the words the Ever app used to frame the invites does not suggest an anonymous invitation. Other cases involving so-called spam-vites brought under the Telephone Consumer Protection Act ("TCPA") have found that when a user sends invitations like those

involved here via an app to one's contacts, the sender of the message is the user, not the app. *See Warciak v. Nikil, Inc.*, No. 16 C 5731, 2017 WL 1093162, at *2–3 (N.D. Ill. Mar. 23, 2017) (deciding on a motion to dismiss that text message using user's name and inviting plaintiff to download app was initiated by the user and so could not support a TCPA claim); *In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 30 F.C.C. Rcd. 7961 ¶ 27 (July 10, 2015) (determining that when users take multiple affirmative steps to send an invitation through a mobile app, the user, not the app provider, is the sender of that text message).[5] This further supports the Court's conclusion that, in agreeing to send an invitation via text message to his contacts, Pratt consented, as the sender of the message, to the use of his identity in that message. The fact that Ever provided the mechanism for Pratt to send such messages is beside the point.

Finally, Pratt's contention that the text invitations were advertisements rather than invitations is a distinction without a difference because the fact of inviting someone to use a product necessarily involves advertising for that product. *See Perkins*, 53 F. Supp. 3d at 1215 (finding no meaningful difference between "invitation emails" and "endorsement emails" for user-initiated invitations). Pratt elected to "[e]arn 1000 GB by inviting friends" and selected the contacts he wished to invite. *See* Doc. 1-1 ¶ 16. But Pratt argues that the advertisements included deceptive and false statements. Pratt does not explain why this would affect his consent to the use of his name in the messages, however, and so the Court does not address the merits of this argument. *See Nelson v. Napolitano*, 657 F.3d 586, 590 (7th Cir. 2011) (the court is not "obliged to research and construct legal arguments for parties, especially when they are represented by counsel").

---

[5] The FCC Order is binding on this Court under the Hobbs Act since neither the Seventh Circuit nor the Supreme Court has ruled on whether the user or the app is responsible for sending text message invites. *See Warciak*, 2017 WL 1093162 at *2 n.1.

Because the Court finds that Pratt consented to the use of his identity in the text messages Everalbum sent to his contacts, negating a key element of his IRPA claim, the Court finds that Pratt's IRPA claim fails and grants Everalbum's motion for judgment on the pleadings.

## II. Attorneys' Fees and Costs

Everalbum requests that the Court award it all its attorneys' fees, costs, and expenses incurred in connection with this motion for judgment on the pleadings as the prevailing party pursuant to IRPA's statutory fee provision. IRPA provides that "[t]he court may award to the prevailing party reasonable attorney's fees, costs, and expenses relating to an action under this Act." 765 Ill. Comp. Stat. 1075/55. Having found for Everalbum, Everalbum is the prevailing party in this action. *See T.D. v. LaGrange Sch. Dist. No. 102*, 349 F.3d 469, 474 (7th Cir. 2003) ("prevailing party is "'a legal term of art,' which signified that the party . . . had been granted relief by a court," such as in a judgment on the merits or a consent decree); *Krautsack v. Anderson*, 861 N.E.2d 633, 643, 223 Ill. 2d 541, 308 Ill. Dec. 302 (2006) ("prevailing party" includes both prevailing plaintiffs and defendants). But IRPA's fee provision, using the word "may," provides the Court with the discretion to award attorneys' fees. *See Krautsack*, 861 N.E.2d at 643. "A court should award attorney fees pursuant to a statutory fee provision where the objectives of the statute and fee provision will be promoted." *Callinan v. Prisoner Review Bd.*, 862 N.E.2d 1165, 1169, 371 Ill. App. 3d 272, 308 Ill. Dec. 962 (2007). As already noted, IRPA protects an individual's "right to control and to choose whether and how to use [his or her] identity for commercial purposes." 765 Ill. Comp. Stat. 1075/10. IRPA provides remedies for the violation of an individual's right of publicity, compensating victims and punishing violators. *See* 765 Ill. Comp. Stat. 1075/40.

While Everalbum has prevailed in this case, demonstrating that Pratt consented to the use of his identity in the text messages at issue, the Court does not find it appropriate to award Everalbum its attorneys' fees, costs, and expenses. Everalbum has not demonstrated how doing so would further IRPA's objectives. Although Everalbum may argue that an award of fees and costs would have a deterrent effect on future similar suits, the Court notes that IRPA decisions are few, and, with advances in technology, Pratt's claim and arguments concerning IRPA's reach and the efficacy of his consent cannot be said to have been frivolous or unfounded. Ultimately, the Court does not agree with Pratt, but this, in the Court's opinion, does not warrant an award of fees and costs under IRPA's discretionary fee provision.

## CONCLUSION

For the foregoing reasons, the Court grants Everalbum's motion for judgment on the pleadings [25]. The Court enters judgment for Everalbum on Pratt's IRPA claim (Count I) and terminates this case. The Court declines to award Everalbum its attorneys' fees, costs, and expenses.

Dated: September 20, 2017

SARA L. ELLIS
United States District Judge